UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
F I L E D

MAR 25 1983

ROBERT H. SHEMWELL, CLERK
BY_____
                    DEPUTY

BASILE MILLER, ET AL

      PLAINTIFFS

VS.

CALCASIEU PARISH SCHOOL BOARD

      DEFENDANT

CIVIL ACTION NO.  83-0242

## MOTION TO DISMISS

NOW COMES the Calcasieu Parish School Board, made defendant in the above entitled and numbered proceeding, which respectfully moves that the Complaint of Basile Miller, et al, be dismissed, because the same action is already presently pending before this Court.

The defendant, Calcasieu Parish School Board, sets forth its grounds fully in the Memorandum attached hereto and made a part hereof.  The defendant makes a part of this proceeding the record in Civil Action No. 80-1709 and Civil Action CI-9981 styled "Rickey Dale Conley, et al v. Lake Charles School Board, et al" on the docket of this Court.

WHEREFORE, DEFENDANT PRAYS that the Complaint of Basile Miller, et al, be dismissed at the costs of plaintiffs.

90

RESPECTFULLY SUBMITTED,

GREGORY W. BELFOUR
ASSISTANT DISTRICT ATTORNEY
FOURTEENTH JUDICIAL DISTRICT
CIVIL DISTRICT
P.O. Box 3206
Lake Charles, Louisiana  70602
COUNSEL FOR CALCASIEU PARISH
 SCHOOL BOARD

RANKIN, YELDELL, HERRING & KATZ
(A PROFESSIONAL LAW CORPORATION)
110 North Franklin Street
Bastrop, Louisiana  71220
COUNSEL FOR CALCASIEU PARISH SCHOOL
 BOARD

BY: _____
     Stephen J Katz

91

CERTIFICATE

I hereby certify that a copy of the above and foregoing has been mailed to MR. RONNIE K. BANKS, SR., A PROFESSIONAL LAW CORPORATION, 1735 Moeling Street, Lake Charles, Louisiana 70801, by placing a copy of same in the United States Mail, postage prepaid, this 2 2 day of March, 1983.

_____
STEPHEN J KATZ

92

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
F I L E D

MAR 2 5 1983

ROBERT H. SHEMWELL, CLERK

BY_____
                              DEPUTY

BASILE MILLER, ET AL

      PLAINTIFFS

VS.                                    CIVIL ACTION NO.  83-0242

CALCASIEU PARISH SCHOOL BOARD

      DEFENDANT

<u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

      This Court is intimately aware of the general history and nature of this school desegregation case.  It is not necessary to recount the entirety of it here.  The Calcasieu Parish School Board has been operating under the court approved plan of desegregation mandated by the Fifth Circuit by order dated August 25, 1980.

      Currently pending is a matter styled "Motion for Additional Relief" filed November 4, 1980 in which the plaintiffs are represented by Mr. Louis Berry of Alexanderia, an experienced counsel in school desegregation matters. The original District Court docket number was CI 9981.  The "Motion for Additional Relief" was given a new docket number of 80-1709-LC.  The instant action filed by Basile Miller, et al, entitled a "Complaint" was filed on

January 20, 1983 and was served on counsel for the defendant March 11, 1983.
The defendant, Calcasieu Parish School Board, has never been served with the
pleading, but in order to bring the matter to a rapid conclusion without the
necessity of additional service, that defense is not raised herein.

At the present time there is pending before this Court a Joint Motion
to Dismiss the Motion for Additional Relief accompanied by a plan to be
implemented by the Calcasieu Parish School Board. The "final touches" are
being made upon the necessary documentation and pleadings to present same to
the court. The Motion for Additional Relief filed November 4, 1980 seeks,
inter alia, that this Court, "enjoin the defendants from continuing the
vestiges of the dual school system and order defendants,... to submit new
desegregation and supplemental plans to abolish and eliminate all vestiges of
the dual school system."

A careful reading of the Complaint filed by Basile Miller, et al,
although the allegations are far from clear and at best are general, shows
that it basically seeks the same relief, that is, an injunction prohibiting
the Calcasieu Parish School Board," from continuing to operate the vestiges
of the dual school system in Calcasieu Parish, Louisiana." Additional items
are prayed for by the plaintiff in the Basile Miller pleading, all of which
fall within the allegation of an operation of a school system which continues
to contain vestiges of the former dual system.

Although the pleading of Basile Miller is styled a "Complaint," it
should be treated as a Motion to Intervene and a Complaint in Intervention in
pending docket number 80-1709-LC (as supplemented to CI 9981). Hines v.
Rapides Parish School Board, 479 F.2d 762 (5th Cir. 1973); Pate v. Dade
County School Board, 588 F.2d 501, 503 (5th Cir. 1979); Brookins v.
Southbend Community School Corp., 95 F.R.D. 407 (N.D. Ind. 1982)

94

The original "Motion for Additional Relief" and the newest Complaint are the same. Although the Complaint of Basile Miller seems to claim that the plaintiffs represent everyone in Calcasieu Parish, "black, white and Indian children and their parents in Calcasieu Parish," that bald face allegation is not supported by any factual basis in the complaint complying with Rule 23 of the Federal Rules of Civil Procedure. Suffice to say that the relief sought in each of the two proceedings is the same, a modification of the current plan of desegregation approved by the Fifth Circuit in docket no. 30100 on August 25, 1970.

The Fifth Circuit and the Supreme Court have decided lines of cases which control the issues presented here in two respects. One line of cases concerns the nature of the role of the Federal Courts in school desegregation cases. The other concerns the propriety of intervention such as that proposed by the Basile Miller Complaint. There is some overlap, but for clarity the two issues will be separated for purposes of discussion.

It is well established in hundreds of desegregation cases that after the constitutional violation has been found to exist, the Federal Courts have great discretion in tailoring a remedy to fit the violation. The not so often discussed corollary to this principle is that absent a constitutional violation, the Federal Court has no role in the operation of the schools. This is fundamentally a function of elected local government. "Judicial interposition in the operation of the public school system of the nation raises problems requiring care and restraint. ... By and large, public education in our nation is committed to the control of state and local authorities. Epperson v. Arkansas, 393 U.S. 97, 104." Board of Curators, University of Missouri v. Horowitz, 435 U.S. 78 (1978) The Supreme Court has stated, "No single tradition in public education is more deeply rooted than

local control over the operation of schools; local autonomy has long been thought essential both to the maintenance of community concern and support for public schools and to the quality of education." Milliken v. Bradley, 418 U.S. 717, 742-43 (1974) Recently the Fifth Circuit in Taylor v. Ouachita Parish School Board, 648 F.2d 959, 969 (5th Cir. 1981) observed in its majority opinion that a Federal Court does not seek to oversee state governmental discretion per se, but merely to remedy constitutional violations.

In Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, the Supreme Court stated:

> "In seeking to define even in broad and general terms how far this remedial power extends it is important to remember that judicial powers may be exercised only on the basis of a constitutional violation. Remedial judicial authority does not put judges automatically in the shoes of school authorities whose powers are plenary. Judicial authority enters only when local authority defaults."

Also see Dayton Board of Education v. Brinkman, 433 U.S. 406 (1977).

The Calcasieu Parish School Board has presented to this Court the basic outline of the plan which is now pending before this Court. In United States v. Perry Board of Education, 567 F.2d 277 (5th Cir. 1978) it was stated at p. 279

> "...there are innumerable instances in which children, parents and teachers may be deprived of various 'rights' (e.g., the 'right' to attend a neighborhood school) without having had the opportunity to participate directly in the judicial proceedings which deprive them of those 'rights'. When these adversely affected groups have sought to intervene, we have frequently declined to permit it. St. Helena Parish School Board v. Hall, 287 F.2d 376 (5th Cir.), cert denied, 368 U.S. 830, 82 S. Ct. 52, 7 L. Ed. 2d 33 (1961); Horton v. Lawrence County Board of Education, 425 F.2d 735 (5th Cir. 1970); Bennett v. Madison County Board of Education, 437 F.2d 554 (5th Cir. 1970)."

4

96

Parents do not have a right to intervene in a desegregation suit under Rule 24(a)(2). Pate v. Dade County School Board, 588 F.2d 501 (5th Cir. 1979)  Permissive intervention is occasionally acceptable under Rule 24(b)(2).  However the tests for permissive intervention involve an even stricter application of the legal standards as compared to intervention as of right. EEOC v. United Airlines, 515 F.2d 946, 949 (7th Cir. 1975)  At the very least even for intervention as of right, the application must be timely and it must be alleged that the applicant's interest is or was not adequately represented by existing parties. NAACP v. New York, 413 U.S. 345 (1973); United Airlines, Inc. v. McDonald, 432 U.S. 385 (1977)  Failure to meet any one of the standards or conditions is sufficient to deny intervention. NAACP v. New York, supra at p. 369.  Representation is adequate if there is no collusion shown between the representative and the opposing party and if the representative does not fail in the fulfillment of his duty as an adequate representative. Martin v. Kalvar Corp., 411 F.2d 552, 553 (5th Cir. 1969) Of course the putative intervenor bears the burden of establishing inadequacy of representation. Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n.10 (1972)

There is no allegation whatsoever in the pleading of Basile Miller of such inadequate representation.  Counsel for the plaintiffs, Louis Berry, has long represented plaintiffs in school desegregation cases in this district and his reputation is well known and respected.  See Valley v. Rapides Parish School Board, 646 F.2d 925 (5th Cir. 1981).

The Complaint of Basile Miller simply sets forth no authority or factual basis for this Court to grant an intervention.  The Complaint of Basile Miller only in the most general terms alleges that there are vestiges of the dual system remaining.  Not one set of facts is set forth to support

5

97

those board conclusions;  even the short listing of "one race" schools does

not in and of itself set forth any justiciable claim that has not previously

been set forth in the Motion for Additional Relief.  Stout v. Jefferson

County Board of Education, 537 F.2d 800 (5th Cir. 1976);  Carr v. Montgomery

County Board of Education, 377 F. Supp. 1123 (M.D. Ala. 1974), aff'd., 511

F.2d 1374 (5th Cir. 1974), cert denied, 423 U.S. 986 (1975)

The only issue which might be interpreted in the Basile Miller

Complaint as being one not specifically related to the elimination of the

vestiges of the dual school system is that contained in the latter part of

paragraph 4 seeking an injunction against the Calcasieu Parish School Board,

"From eliminating(sic) defendant from closing and/or merging both Boston and

Marion High Schools and order that Lake Charles High School be lefted(sic)

with its present racial composition because it is already racially balanced."

United States v. Perry County Board of Education, 567 F.2d 277 (5th Cir.

1980) is strickingly similar to the instant situation.  There, the school

board filed a petition for approval of construction of new schools.  A group

of parents moved to intervene in opposition.  The District Court denied that

motion and the Court of Appeal affirmed.  It first noted that it had adopted

an interpretation of the interests which must appear to justify intervention

which was relatively narrow.  It held at pp. 279-280 that:

> "We find no such interest in the instant case.  The parents
> are not seeking to challenge deficiencies in the implementation
> of desegregation orders but are attempting 'to bring to the attention
> of the [District Court] the issue of the desirability of
> constructing a centralized consolidated high school as opposed
> to the Board's proposal of constructing the school at the site
> of a former facility...'"

Finally in Valley v. Rapides Parish School Board, supra, the Court

reaffirmed the continuing vitality of the principles regarding such an issue.

There, faced with a Motion to Intervene by parents opposing the closing of the school in their neighborhood, the Court cited Pate and Perry County and affirmed the denial of the intervention. A school consolidation is exactly the same issue.

The defendant submits that it is clear as a matter of law that the complaint-intervention should be dismissed and denied. It does not make any claim which has not been raised previously in this litigation. It merely rests on interests which the Fifth Circuit has consistently found inadequate to support intervention. Although the Basile Miller intervenors-plaintiffs have concerns which are understandable, they nevertheless are not of a nature to support their intervention. It is time that the litigation now pending reach a reasonable conclusion and the untimely filing of the Basile Miller complaint can only further delay the continued implementation of the plan heretofore submitted in the record in docket number 80-1709. The Complaint of Basile Miller was filed some twenty-six months after the Motion for Additional Relief was filed and there is simply no justification whatsoever that is stated or can be stated for such a long delay.

Although the Courts have held in school desegregation cases that such a complaint as that filed by Basile Miller should be considered as an application for intervention, in non-school related actions, when an action is filed which has identical issues as one that is pending, and the subject matter and parties are essentially the same, the second action should be dismissed even though a separate suit. United States v. Haytian Republic, 154 U.S. 118, 123-24 (1894); Sutcliffe Storage & Warehouse Co. v. United States, 162 F.2d 849, 851 (1st Cir. 1947); Walton v. Eaton Corp., 563 F.2d 66, 70 (3rd Cir. 1977); New York Milk Shed Transp., Inc. v. Meyers, 144 F. Supp. 174 (N.D. N.Y. 1956); Jones v. American Guild of Variety Artists, 199

7

99

F. Supp. 840 (E.D. Pa. 1961).

Obviously it is a waste of judicial efficiency to have two actions pending at the same time seeking the same result against the same defendant with the same status of the plaintiffs. Alternatively, the action filed by Basile Miller should be stayed until such time as the first action filed is resolved. International Nickel Co. v. Martin J. Barry, Inc., 204 F.2d 583 (4th Cir. 1953); Nelson v. Grooms, 307 F.2d 76 (5th Cir. 1962); Pet Milk Co. v. Ritter, 323 F.2d 566 (10th Cir. 1963); Landis v. North American Co., 299 U.S. 248 (1936); Crawford v. Seaboard Coast Line Railroad Company, 286 F. Supp. 556 (S.D. Ga. 1968). As the Court stated in Landis v. North American Co., at p. 254.

> "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time in effort or itself, for counsel and for litigants."

However a stay would not be appropriate in this action because the complaint filed by Basile Miller is and should be considered as an application for intervention and the resolution of the matter in the original docket number under the Motion for Additional Relief will resolve the allegations made by Basile Miller which are justiciable and his other allegations such as the changing of schools and consolidation of schools are not judicial justiciable issues warranting action by a Federal Court and hence there would be nothing to litigate once the matter in the original docket number is reolved.

In summary the plaintiffs in the Basile Miller pleading have asserted no claim which as a matter of law should allow them to intervene in this pending action. Their pleading should be considered an application for intervention. Any relief sought by the Basile Miller plaintiffs is identical

8

to that which is sought by the original plaintiffs in the Motion for Additional Relief filed by their counsel, Louis Berry, over two years before the filing of the Basile Miller litigation.  Any other matters which could conceivably be raised by the Basile Miller Complaint rest on interests which the Fifth Circuit has consistently found inadequate to support intervention and do not go to the constitutional infirmnity of the plan presently pending before this Court.

RESPECTFULLY SUBMITTED,

GREGORY W. BELFOUR
ASSISTANT DISTRICT ATTORNEY
FOURTEENTH JUDICIAL DISTRICT
CIVIL SECTION
P.O. Box 3206
Lake Charles, Louisiana  70602
COUNSEL FOR CALCASIEU PARISH
SCHOOL BOARD


RANKIN, YELDELL, HERRING & KATZ
(A PROFESSIONAL LAW CORPORATION)
110 North Franklin Street
Bastrop, Louisiana  71220
COUNSEL FOR CALCASIEU PARISH SCHOOL
 BOARD

BY: _____
        Stephen J Katz

CERTIFICATE

I hereby certify that a copy of the above and foregoing has been mailed to MR. RONNIE K. BANKS, SR., A PROFESSIONAL LAW CORPORATION, 1735 Moeling Street, Lake Charles, Louisiana 70801, by placing a copy of same in the United States Mail, postage prepaid, this ____ day of March, 1983.

STEPHEN J KATZ

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
**FILED**

MAY 16 1983

ROBERT H. SHEMWELL, CLERK
BY_____
                                    DEPUTY

BASILE MILLER, ET AL

    PLAINTIFFS

VS.                                    CIVIL ACTION NO. 83-0242

CALCASIEU PARISH SCHOOL BOARD

    DEFENDANT

*Place copy in 801709
per atty Katz's
instructions*

### SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
### MOTION TO DISMISS

    Because of the postponement, at the request of counsel for plaintiffs, of the hearing on the Motion to Dismiss which had been fixed for May 5, 1983 and since counsel for the plaintiffs has still not filed a response to the Motion to Dismiss, defendant, Calcasieu Parish School Board, files this brief supplemental memorandum.

    The Motion to Dismiss was filed with this Court on the 25th day of March, 1983, accompanied by a memorandum in support thereof.

    Local Rule 10(f) of this Court provides in pertinent part that:

    "If the respondent opposes a motion, he shall file his
    response, including opposing affidavits (if the motion

103

is one for summary judgment pursuant to Rule 56(c) of
the Federal Rules of Civil Procedure), brief, and support-
ing documents as are then available, within ten days after
service of the motion.  Briefs shall contain a concise
statement of reasons in opposition to the motion, and a
citation of authorities upon which the respondent relies."

The rule further provides that a respondent, if he desires, may file a

request for an extension of time to file his opposition.  No such request has

ever been made by the counsel for plaintiffs in this action nor has counsel

for plaintiffs filed any opposition to the Motion to Dismiss.  It is note-

worthy that the counsel for plaintiffs brought this action as a class action

and alleged that the plaintiffs represent, "Black, white and Indian children

and their parents in Calcasieu Parish," Louisiana.  To say that all of those

purported class members do not have antagonistic interest is absurd.  Rule 23

requires that the representatives of the class members and the class members

themselves cannot have antagonistic goals or have conflicting objectives.  If

those conflicts or antagonisms are present, the matter cannot be pursued as a

class action.  Albertoson's, Inc. v. Amalgamated Sugar Co., 503 F.2d 459 (10th

Cir. 1974);  Schy v. Susquehanna Corp., 419 F.2d 1112 (7th Cir. 1970), cert.

den. 400 U.S. 826;  Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2nd Cir.

1968);  Troup v. McCart, 238 F.2d 289 (5th Cir. 1956);  Anderson v. Moorer,

372 F.2d 747 (5th Cir. 1967);  Payne v. Travenol Labs., Inc., 673 F.2d 798

(5th Cir. 1982)

The Supreme Court in East Texas Motor Freight v. Rodriguez, 431 U.S.

395, 97 S. Ct. 1891, 52 L. Ed. 2d 452 (1977) at 431 U.S. 405 reversed the

decision of the 5th Circuit to certify a matter as a class action based upon

the conflicting interest of the class members by stating:

"Another factor, apparently on the record, suggesting that

the named plaintiffs were not appropriate class representatives
was a conflict between the vote by members of the class re-
jecting a merger of the City - and line - driver collective-
bargaining units, and the demand in the plaintiff's complaint
for just such a merger. See, e.g. <u>Hansberry v. Lee</u>, 311 U.S.
32, 44-45, 61 S. Ct. 115, 85 L. Ed. 22."

Since it is the duty of the District Court to insure that the
requirements of Rule 23 are met, an action which does not meet the
requirements of Rule 23 when brought as a class action should be dismissed.
<u>Tijerina v. Henry,</u> 48 F.R.D. 274 (D. N.M. 1969); <u>Cousins v. City Council of
the City of Chicago,</u> 322 F. Supp. 428 (N.D. Ill. 1971) rev'd on other grounds
466 F.2d 830 (7th Cir. 1972) cert. den. 409 U.S. 803; <u>Campo v. National
Football League,</u> 334 F. Supp. 1181 (E.D. La. 1971); <u>Greenhouse v. Greco</u>, 617
F.2d 408 (5th Cir. 1950)

The bizarre nature of the class action allegations as well as the
failure of counsel for the plaintiffs to comply with local court rules or in
any other fashion to oppose the Motion to Dismiss also gives rise to the issue
of adequate class representation. Adequate representation depends on two
factors, one of which is discussed above regarding the named plaintiffs and
the class members not having antagonistic interests. Additionally adequate
representation requires that the plaintiffs' attorney must be qualified,
experienced and generally able to conduct a proposed litigation. <u>Eisen v.
Carlisle & Jacquelin,</u> supra; <u>Wetzel v. Liberty Mutual Insurance Company,</u> 508
F.2d 239, 247 (3rd Cir. 1975)

Counsel for the original plaintiff class in this case, Louis Berry, is
well known and well respected in civil rights and school litigation having
firsthand experience over several decades in the complicated issues of this
type of litigation. Counsel for the plaintiff-intervenors, Basile Miller, et
al, apparently has no experience in this type of litigation and has not been

105

able to abide by either local court rules or general federal practice in either drafting a complaint or responding to the Motion to Dismiss. It is clearly the burden of the purported plaintiffs to establish that they are adequate class representatives and that their counsel would adequately represent the members of class. Oppenheimer v. F.J. Young & Co., 144 F.2d 387 (2nd Cir. 1944); Susman v. Lincoln & Corp., 561 F.2d 86 (7th Cir. 1977) The Fifth Circuit has heretofore held that it was improper to attempt to certify a class consisting of all qualified voters in a county in a challenge of a reapportionment plan since obviously some of the voters in the county were benefited by the plan under attack. Fairley v. Patterson, 493 F.2d 598, 604 (5th Cir. 1974) That situation is clearly analogous to the attempt made by the counsel for the Basile Miller plaintiffs in this litigation. The attorney for the Basile Miller plaintiffs has an obligation to recognize potential conflicts between class members and to point out those conflicts to the court. Pettway v. American Cast Iron Pipe Co., 576 F.2d 1157 (5th Cir. 1978), reh. den. 581 F.2d 267 (5th Cir. 1978), cert. den. 439 U.S. 1115. He has not done so in this case.

The defendants suggest that the antagonisms and conflicts existing between the putative class members and the putative class in the Basile Miller group as well as the actions by counsel for that group clearly show that the requirements of Rule 23(a)(3) and (4) have not been met and cannot be met and accordingly their claims should likewise be dismissed.

The Calcasieu Parish School Board further attaches hereto and makes a part hereof certain summaries of the current and past school enrollments at the high schools that the Basile Miller group have challenged together with the resident population for those various high school zones indicating that

106

the plan of the Calcasieu Parish School Board has indeed eliminated two racially identifiable high schools and if there is compliance with school zone lines Lake Charles High School will not be substantially racially altered.

For the reasons stated herein and in the original Memorandum In Support of the Motion to Dismiss, the complaint of the Basile Miller plaintiffs, which should be categorized as a complaint in intervention, as fully set forth in the original memorandum filed by defendant herein, should be dismissed at the costs of the plaintiffs-internvenors.

RESPECTFULLY SUBMITTED,

GREGORY W. BELFOUR
ASSISTANT DISTRICT ATTORNEY
FOURTEENTH JUDICIAL DISTRICT
CIVIL SECTION
P.O. Box 3206
Lake Charles, Louisiana 70602
COUNSEL FOR CALCASIEU PARISH
 SCHOOL BOARD

RANKIN, YELDELL, HERRING & KATZ
(A PROFESSIONAL LAW CORPORATION)
110 North Franklin Street
Bastrop, Louisiana 71220
TELEPHONE: (318) 281-4913
COUNSEL FOR CALCASIEU PARISH
 SCHOOL BOARD

BY: _____
            Stephen J. Katz

107

CERTIFICATE

I hereby certify that a copy of the above and foregoing has been mailed to MR. RONNIE K. BANKS, SR., A PROFESSIONAL LAW CORPORATION, 1735 Moeling Street, Lake Charles, Louisiana 70801 and MR. LOUIS BERRY, ATTORNEY AT LAW, 1406 Ninth Street, Alexandria, Louisiana, by placing a copy of same in the United States Mail, postage prepaid.

BASTROP, LOUISIANA this ___ day of May, 1983.

STEPHEN J KATZ

108

## CURRENT ENROLLMENT 4-15-83

| | No. White | % White | No. Black | % Black | Total |
|---|---|---|---|---|---|
| Lake Charles High School | 287 | 45.5 | 344 | 54.5 | 631 |
| W. O. Boston High School | 5 | 1.1 | 454 | 98.9 | 459 |
| LaGrange Sr. High School | 868 | 66.7 | 433 | 33.3 | 1301 |

Notes:

(1) Because of zone realignments, the racial composition of the consolidated Lake Charles-Boston High School should remain basically at a 45% white and 55% black ratio. This is due to the reassignment of black students from the 1982-83 boundaries of both Lake Charles and W. O. Boston High Schools to both LaGrange Sr. and Washington High Schools.

(2) Because of a shift in the housing pattern of Ward 3 and the City of Lake Charles, the percentage of black students increased at LaGrange Sr. High School over the projected 1983-84 percentage listed in the original proposal.

(3) The racially identifiable high schools will be reduced by two (2) beginning with the 1983-84 session.

Lake Charles High School
Student Enrollment

| School Session | White | Black | Total | Percent White | Percent Black |
|---|---|---|---|---|---|
| 1966-67 | 721 | 0 | 721 | 100 | -- |
| 1967-68 | 803 | 97 | 900 | 89.2 | 10.8 |
| 1968-69 | 953 | 81 | 1,034 | 92.2 | 7.8 |
| 1969-70 | 1,038 | 101 | 1,139 | 91.1 | 8.9 |
| 1970-71 | 866 | 259 | 1,125 | 77.0 | 23.0 |
| 1971-72 | 807 | 278 | 1,085 | 74.4 | 25.6 |
| 1972-73 | 739 | 325 | 1,064 | 69.5 | 30.5 |
| 1973-74 | 677 | 330 | 1,007 | 67.2 | 32.8 |
| 1974-75 | 625 | 311 | 936 | 66.8 | 33.2 |
| 1975-76 | 595 | 366 | 961 | 61.9 | 38.1 |
| 1976-77 | 586 | 356 | 942 | 62.2 | 37.8 |
| 1977-78 | 539 | 364 | 903 | 59.7 | 40.3 |
| 1978-79 | 516 | 432 | 948 | 54.4 | 45.6 |
| 1979-80 | 442 | 436 | 878 | 50.3 | 49.7 |
| 1980-81 | 367 | 371 | 738 | 49.7 | 50.3 |
| 1981-82 | 291 | 298 | 589 | 49.4 | 50.6 |
| 1982-83 | 299 | 352 | 651 | 45.9 | 54.1 |

110

RESIDENT POPULATION

Lake Charles-Boston Zone                          1983-84

|          | Total Population | White | Black | Other |
|----------|-----------------|-------|-------|-------|
| Pct. 4   | 2005 | 12 | 1981 | 12 |
| Pct. 5   | 940  | 126 | 806 | 8 |
| Pct. 6   | 530  | 378 | 148 | 4 |
| Pct. 7   | 1542 | 1407 | 131 | 4 |
| Pct. 8   | 827  | 685 | 116 | 26 |
| Pct. 9   | 934  | 733 | 196 | 5 |
| Pct. 10  | 894  | 653 | 239 | 2 |
| Pct. 11  | 1159 | 24 | 1133 | 2 |
| Pct. 12  | 1878 | 1742 | 121 | 15 |
| Pct. 14  | 498  | 494 | 2 | 2 |
| Pct. 15  | 1250 | 1198 | 51 | 1 |
| Pct. 16  | 757  | 540 | 217 | 0 |
| Pct. 17  | 1631 | 806 | 811 | 14 |
| Pct. 18  | 2416 | 2344 | 61 | 11 |
| Pct. 19  | 740  | 723 | 16 | 1 |
| Pct. 20  | 905  | 764 | 134 | 7 |
| Pct. 21  | 1403 | 1339 | 53 | 11 |
| Pct. 28  | 1692 | 117 | 1564 | 11 |
| Pct. 29  | 492  | 298 | 194 | 0 |
| Pct. 39  | 946  | 851 | 89 | 6 |
| Total    | 23439 | 15234 | 8063 | 142 |

111

RESIDENT POPULATION

LaGrange High Zone                                          1983-84

|  | Total Population | White | Black | Other |
|---|---|---|---|---|
| Pct. 17 | 784 | 2 | 780 | 2 |
| Pct. 19 | 874 | 852 | 22 | 0 |
| Pct. 20 | 889 | 867 | 12 | 10 |
| Pct. 24 | 919 | 912 | 1 | 6 |
| Pct. 25 | 5763 | 2201 | 3517 | 45 |
| Pct. 29 | 1209 | 519 | 683 | 7 |
| Pct. 30 | 4584 | 4271 | 265 | 48 |
| Pct. 31 | .769 | 645 | 123 | 1 |
| Pct. 34 | 2360 | 2206 | 142 | 12 |
| Pct. 35 | 3434 | 3149 | 252 | 33 |
| Pct. 36 | 3722 | 3412 | 234 | 76 |
| Pct. 38 | 1068 | 1027 | 21 | 20 |
| Pct. 39 | 574 | 253 | 310 | 11 |
| Pct. 42 | 586 | 395 | 189 | 2 |
| Total | 27535 | 20711 | 6551 | 273 |

112

RESIDENT POPULATION

Lake Charles High Zone                                    1982-83

|          | Total Population | White | Black | Other |
|----------|-----------------:|------:|------:|------:|
| Pct.  8  | 484  | 369  | 106 | 9  |
| Pct.  9  | 647  | 552  | 90  | 5  |
| Pct. 10  | 124  | 109  | 14  | 1  |
| Pct. 12  | 1878 | 1742 | 121 | 15 |
| Pct. 14  | 498  | 494  | 2   | 2  |
| Pct. 15  | 1250 | 1198 | 51  | 1  |
| Pct. 16  | 57   | 40   | 17  | 0  |
| Pct. 17  | 1462 | 743  | 705 | 14 |
| Pct. 18  | 2416 | 2344 | 61  | 11 |
| Pct. 19  | 740  | 723  | 16  | 1  |
| Pct. 20  | 905  | 764  | 134 | 7  |
| Pct. 21  | 1403 | 1339 | 53  | 11 |
| Pct. 29  | 194  | 61   | 133 | 0  |
| Pct. 39  | 1520 | 1104 | 399 | 17 |
| Total    | 13578 | 11582 | 1902 | 94 |

113

RESIDENT POPULATION

LaGrange High Zone                                      1982-83

|          | Total Population | White | Black | Other |
|----------|------------------|-------|-------|-------|
| Pct. 19  | 874              | 852   | 22    | 0     |
| Pct. 20  | 889              | 867   | 12    | 10    |
| Pct. 24  | 919              | 912   | 1     | 6     |
| Pct. 25  | 5763             | 2201  | 3517  | 45    |
| Pct. 30  | 4584             | 4271  | 265   | 48    |
| Pct. 31  | 769              | 645   | 123   | 1     |
| Pct. 34  | 2360             | 2206  | 142   | 12    |
| Pct. 35  | 3434             | 3149  | 252   | 33    |
| Pct. 36  | 3722             | 3412  | 234   | 76    |
| Pct. 38  | 1068             | 1027  | 21    | 20    |
| Total    | 24382            | 19542 | 4589  | 251   |

114